UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LISA MITCHELL,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:17-cv-361
Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply memorandum (Doc. 10).

**I. Procedural Background**

Plaintiff filed an application for SSI on September 20, 2013, alleging disability since August 1, 2013. Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Kevin Detherage. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On April 25, 2016, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

2

the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since September 20, 2013, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: bilateral knee arthritis, bilateral rotator cuff tear, obesity, sinus tachycardia, depression, a bipolar disorder, an affective disorder, and a substance use disorder (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work which is simple and unskilled, as defined in 20 CFR 416.967(b) except: Can occasionally stoop, kneel, crouch, or crawl; unable to climb ladders, ropes, or scaffolds, but can climb ramps and stairs occasionally. Should avoid exposure to hazards, such as heights or machinery with moving parts. Can reach frequently (including overhead) with the upper extremities. No production rate pace work. Occasional changes in a routine work place setting. The [plaintiff] is likely to be absent from work one day per month. The [plaintiff] is likely to be off task 10% of the work period.
>
> 5. The [plaintiff] is capable of performing past relevant work as a housekeeper as this job is generally performed in the economy. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 416.965).

6. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since September 20, 2013, the date the application was filed (20 CFR 416.920(f)).

(Tr. 43-52). In the alternative, the ALJ made a Step Five finding that plaintiff was able to perform other jobs in the national economy. Relying on VE testimony, the ALJ determined that plaintiff could perform the requirements of representative light, unskilled occupations such as price marker (230,000 jobs nationally), photocopy machine operator (30,000 jobs nationally), and cleaner (400,000 jobs nationally). (Tr. 52).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff alleges five assignments of error: (1) the ALJ disregarded the testimony of the vocational expert that plaintiff could not work based on her emotional limits as described by Dr. Chiappone; (2) the ALJ disregarded the testimony of the vocational expert that plaintiff could not work based on her emotional limits as described by plaintiff's treating therapist; (3) the ALJ erroneously disregarded the ban on stooping imposed by Dr. Fritzhand, Social Security's medical examiner; (4) the ALJ disregarded the testimony of the vocational expert that plaintiff could not work due to the other physical limits placed on her by Dr. Fritzhand; and (5) the ALJ erred by failing to consider the effect of plaintiff's massive obesity on her ability to do the extensive standing and walking needed for light work.

**1. The VE testimony and Dr. Chiappone's assessment**

Plaintiff alleges that the ALJ erred by disregarding the VE testimony that plaintiff could not work based on her mental limitations as assessed by Dr. David Chiappone, Ph.D.

Dr. Chiappone, a consultative psychologist, performed a psychological assessment of plaintiff on January 16, 2014. Dr. Chiappone diagnosed alcohol use disorder, severe, in remission; cocaine use disorder, severe, in remission; and major depressive disorder with

psychotic features, in partial remission. (Tr. 349). In assessing plaintiff's work-related limitations from a mental standpoint, Dr Chiappone opined that plaintiff "*would* have some difficulty remembering information over time"; "*may* have some difficulty maintaining attention and concentration over time"; "*may* have some difficulty dealing with co-workers and supervisors"; and "*would* have some difficulty dealing with stress on a job." (Tr. 348) (emphasis added). Dr. Chiappone stated that plaintiff "probably *would* decompensate and have more or more intense psychotic symptoms with a lot of stress and demands." (Tr. 349) (emphasis added).

The ALJ gave "partial weight" to the assessment of Dr. Chiappone. (Tr. 50). The ALJ stated that Dr. Chiappone "assessed no function-by-function limitations, and indicated that the claimant 'may' have difficulty in these areas, which limits the usefulness of his assessment." (*Id.*). The ALJ stated, "Nevertheless, the residual functional capacity finding of this decision accommodates his limitations." (*Id.*).

The ALJ's hypothetical question to the VE set forth physical limitations and mental limitations including "no production rate pace work, only occasional changes in a routine workplace setting, can [h]ave occasional contact with coworkers, supervisors, and the general public." (Tr. 110). In response to this question, the VE testified that plaintiff could perform her past relevant work and other light work in the local and national economies. (Tr. 110-112). On cross-examination by plaintiff's attorney, the VE was asked the following:

> Q: [I]f you think about Dr. [Chiappone's] limits . . . in Exhibit 5F-10, he said she would have some difficulty remembering information over time, some difficulty maintaining attention and concentration over time, some difficulty dealing with coworkers and supervisors, and some difficulty dealing with work stress over time. And that as job demands increase she would likely decompensate. Is that specific enough for you to offer an opinion on?

6

> A: It is. In those types of reports and in those terms, *typically over time it means that the longer the person has to do it the less they will be able to do it.* So that becomes a significant issue with attention and concentration and also with work stress, so whether over time means that as the eight hour day goes on the person deteriorates, or as the week goes on. But in either case *it indicates that the individual's not going to be able to maintain function.* And in regards to the work stress there is stress in any job, and so an individual who *over time can deal less with work stress, eventually that would indicate that they would not be able to function.*

(Tr. 119-120) (emphasis added).

Plaintiff contends while the ALJ stated his RFC "accommodates" Dr. Chiappone's limitations, the VE's testimony clearly refutes this assertion. (Doc. 6 at 8). In addition, plaintiff asserts the ALJ mischaracterized Dr. Chiappone's limitations by stating that Dr. Chiappone indicated plaintiff "may" have difficulty in mental functioning, when in reality Dr. Chiappone stated plaintiff "would" have some difficulty remembering information over time and dealing with stress on a job (Tr. 348) and likely "would" decompensate and have more or more intense psychotic symptoms with a lot of stress and demands of a job. (Tr. 349).

The Commissioner argues the ALJ's RFC limitation for only simple and unskilled work and only occasional changes in routine work place setting reasonably accounts for Dr. Chiappone's opinion that plaintiff would have some difficulty remembering information over time and may have some difficulty maintaining attention and concentration over time. (Doc. 9 at 5, citing Tr. 48). In addition, the Commissioner asserts the ALJ's RFC limitation of no production rate work reasonably accounts for Dr. Chiappone's opinion that plaintiff would have difficulty dealing with stress on a job. (Doc. 9 at 5, citing Tr. 48). The Commissioner states that "while the ALJ could have been more clear," he reasonably accounted for Dr. Chiappone's limitations. The Commissioner also contends that it is up to the ALJ, and not the VE, to assess

7

an individual's RFC and the ALJ was not required to accept the VE's interpretation of Dr. Chiappone's opinion. (Doc. 9 at 6, 8).

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 290 (6th Cir. 2014) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). To constitute substantial evidence, the hypothetical question posed to the VE must accurately reflect the claimant's physical and mental limitations. *See Ealy v. Commissioner of Social Security,* 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002). The ALJ is required to incorporate only those limitations that he or she finds credible. *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016); *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) (same).

In this case, the ALJ's Step Four and Step Five decisions are not supported by substantial evidence as the ALJ relied on a hypothetical question that failed to accurately reflect plaintiff's mental limitations. While the ALJ stated his RFC "accommodates" the limitations set forth in Dr. Chiappone's assessment, the VE testimony appears to indicate the contrary. The VE testified that accepting Dr. Chiappone's stated limitations, plaintiff from a vocational standpoint would not be able to function in a work setting given Dr. Chiappone's specific qualifications that "over time" plaintiff would have difficulty remembering information and maintaining attention and concentration and would likely decompensate from work stress. (Tr. 119-120). The ALJ did not seek clarification from the VE in response to counsel's question, nor did he address the VE's testimony in this regard in his decision. The Court does not disagree with the Commissioner's

8

assertion that it is the obligation of the ALJ, and not the VE, to assess a claimant's RFC and to incorporate into a hypothetical question only those limitations the ALJ finds are supported by the record. *See Maziarz v. Sec'y of HHS*, 837 F.2d 240, 247 (6th Cir. 1987). An ALJ is not required to adopt a vocational expert's "interpretation" of the medical evidence. In this case, however, the VE was not offering an opinion or interpretation of Dr. Chiappone's assessment but rather an opinion on the vocational implications of Dr. Chiappone's assessed limitations "over time." As the ALJ appears to have accepted Dr. Chiappone's limitations by stating his RFC "accommodates" those restrictions, the hypothetical question upon which the ALJ relied is incomplete as it omits the temporal qualification "over time." (Tr. 119-120, 347-348). To the extent the Commissioner contends the ALJ accommodated only the limitations the ALJ found credible (Doc. 9 at 4), the ALJ's decision fails to discuss or discount Dr. Chiappone's articulated findings of limited memory, concentration, and attention "over time" and plaintiff's likelihood of decompensation by experiencing "more or more intense psychotic symptoms" as a consequence of work stress. Given the limited analysis provided by the ALJ in affording Dr. Chiappone's opinion "partial weight," while nevertheless "accommodat[ing]" Dr. Chiappone's limitations in his RFC, it is not clear to the Court what portions of Dr. Chiappone's opinion the ALJ credited and which portions he rejected or his reasons for doing so. The ALJ failed to discuss or discount the VE's testimony on the vocational implications of these time-based considerations, which directly impact plaintiff's RFC and her ability to work. As such, plaintiff's first assignment of error should be sustained.

## 2. Weight to plaintiff's treating mental health therapist

The ALJ gave "little weight" to the opinion of treating mental health therapist Francine Weil, LISW, who opined that plaintiff was markedly limited (defined as seriously limited ability to function) and extremely limited (defined as no useful ability to function) in 17 of 20 areas of mental health functioning. (Tr. 50). The ALJ stated that these limitations are inconsistent with plaintiff's lack of inpatient psychiatric hospitalizations since 2000, her ability to live alone, and her ability to help a disabled neighbor in 2015. (*Id.*). The ALJ stated that plaintiff "would likely be institutionalized were her limitations as great" as alleged by her therapist. (*Id.*). Finally, the ALJ discounted Ms. Weil's opinion because she is not an acceptable medical source. (*Id.*).

Plaintiff alleges the ALJ's decision granting "little weight" to the opinion of her treating mental health therapist is not supported by substantial evidence. Plaintiff claims the ALJ used an invalid rationale in discounting her treating therapist's opinion; placed too much weight on plaintiff's ability to perform limited activities of daily living; improperly concluded that Ms. Weil's limitations would have resulted in inpatient care and/or institutionalization; and cherry-picked the record by selecting an isolated event – plaintiff's providing assistance to a disabled neighbor – to discount's Ms. Weil's opinion.

The Commissioner alleges that the ALJ reasonably determined that the therapist's opinion that plaintiff had an extreme limitation, i.e., no useful ability, to function independently was inconsistent with plaintiff's ability to live alone (Tr. 63, 405) and her ability to provide assistance to a disabled neighbor (Tr. 498). The Commissioner also contends that it was not unreasonable for the ALJ to conclude that given the numerous "extreme" and "marked" limitations assessed by Ms. Weil that plaintiff would have required more psychiatric

hospitalizations or been unable to live independently. The Commissioner further asserts that plaintiff's therapist is considered an "other source" or a medical source who is not an "acceptable medical source" under the regulations, which is a factor the ALJ reasonably considered in weighing Ms. Weil's opinion. (Doc. 9 at 10, citing 20 C.F.R. §§ 416.902, 416.913(d), SSR 06-03p).

Because Ms. Weil is a licensed social worker, she is not an "acceptable medical source" as defined under the Social Security rules and regulations; instead, the therapist is categorized as an "other source." *See* SSR 06-03p, 2006 WL 2329939, *1-2 (2006)[1]; former 20 C.F.R. §§ 404.1513(a), 416.913(a).[2] Only "acceptable medical sources" as defined under former 20 C.F.R. §§ 404.1513(a), 416.913(a) can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, *2. Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Factors that are appropriately considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include "the nature and extent of the relationship between the

---

[1] SSR 06-3p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). Because plaintiff's claim was filed before the effective date of the rescission, SSR 06-3p applies here.

[2] Former §§ 404.1513 and 416.913 were in effect until March 27, 2017, and therefore apply to plaintiff's claim filed in 2013. For claims filed on or after March 27, 2017, all medical sources, not just acceptable medical sources, can make evidence that the Social Security Administration categorizes and considers as medical opinions. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).

11

source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." *Id.*, *5. *See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)). Not every factor will apply in every case. SSR 06-03p, 2006 WL 2329939, *5.

The ALJ's decision to discount Ms. Weil's opinion is not substantially supported by the record. The ALJ correctly acknowledged that Ms. Weil is not an acceptable medical source under the governing rules and regulations. (Tr. 50). The ALJ nonetheless failed to evaluate Ms. Weil's opinion in accordance with the applicable rules and regulations. The ALJ did not consider the extent and true nature of the treatment relationship, whether Ms. Weil presented relevant evidence to support her opinion, or whether the opinion was supported by the other evidence of record.

Plaintiff underwent a diagnostic assessment and began treatment at Centerpoint Health/Talbert House with Ms. Weil in August 2013. The diagnostic assessment notes that throughout the session plaintiff was agitated, her mood was depressed, and her behavior was tearful. Plaintiff reported a dislike of being around people, feeling agitated, and experiencing crying spells every day. (Tr. 356-61, 375). Plaintiff described auditory/visual hallucinations that frightened her. On mental status examination, her impulse control was poor, her facial expression was sad, her mood was anxious, and her judgment and insight were impaired. (Tr. 356). She reported two previous suicide attempts and hospitalizations, with the last one in 2000. She was diagnosed with Major Depressive Disorder with psychotic behavior. (Tr. 307). On September 12, 2013, plaintiff reported she continues to feel depressed almost every day, is

irritable and tearful, and isolates to avoid others. Her mood was depressed and her behavior was tearful. (Tr. 374). Ms. Weil assessed bipolar disorder, most recent depressed. (*Id.*). On September 19, 2013, plaintiff reported that it was difficult to come to her appointment that day due to an interpersonal conflict and depression. Her affect was flat, her mood was depressed, and her behavior was tearful. (Tr. 373). Ms. Weil assessed bipolar disorder, most recent depressed. (*Id.*).

On October 22, 2013, Dr. David Berhowzer, M.D., the Talbert House psychiatrist, noted plaintiff was positive for depression, sleep problems, and auditory hallucinations. He reported that the "voices tell her to do things" and she "thinks she's being watched." (Tr. 386). Her mood and affect were depressed with suicidal ideation. (*Id.*). Dr. Berhowzer added a new medication to plaintiff's regimen. (Tr. 387). On October 25, 2013, Ms. Weil reported that plaintiff's presentation had improved, yet she still struggled with grief issues and depression. (Tr. 372). On November 18, 2013, plaintiff presented as cheerful, brighter, and more talkative (Tr. 371), but one week later on November 25, 2013, she presented as sad and depressed. (Tr. 367). Plaintiff stated she was "not feeling well today; the voices are back; the meds only help for a while." (*Id.*). On December 3, 2013, Dr. Berhowzer noted plaintiff's medication helped at night but the "voices [are] still strong during daytime." (Tr. 380). Plaintiff was noted as positive for hearing voices, depression, and sleep problems. (Tr. 381). He assessed plaintiff was "slightly improved" and adjusted her medications. (Tr. 382-383). That same day for her therapy session with Ms. Weil, plaintiff presented as flat, depressed, and agitated. (Tr. 370).

On January 8, 2014, Ms. Weil noted that plaintiff's affect was flat and her mood was anxious. She presented as "sad, depressed, [and] anxious." (Tr. 369). Plaintiff stated she was

13

having difficulty obtaining her psychotropic medications. (*Id.*). On February 4, 2014, plaintiff reported to Ms. Weil that she "stopped taking my meds and I really felt it." (Tr. 368). When she met with Dr. Berhowzer that same day, she was "not too good," the "voices [were] better, but depressed and 'stay crying.'" (Tr. 376). Plaintiff continued with depression and sleep problems and Dr. Berhowzer assessed her improvement as "some." (Tr. 378). He added a new medication. (Tr. 379).

On March 25, 2014, Ms. Weil reported that plaintiff presented as depressed, a bit disorganized, and talkative. Plaintiff stated she was without an appetite for approximately one month and the medications she was taking caused involuntary muscular movements with her mouth and hands and excessive dry mouth. (Tr. 366). On March 31, 2014, plaintiff's therapist reported that plaintiff's mood was depressed, her behavior was cooperative, and her presentation was tearful. Plaintiff continued to have side effects from her medications and presented as tearful and frustrated. (Tr. 365).

In May 2014, Ms. Weil provided a report on plaintiff's mental functioning and noted that plaintiff's symptoms included marked diminished interest or pleasure in almost all activities; appetite disturbances; night terrors and frequent panic attacks; a fear of leaving her house; a need to motivate herself to make her appointments; feelings like the world is closing in; excessive sleep; feelings of guilt or worthlessness resulting from sexual abuse as a child; thoughts of suicide; auditory and visual hallucinations ("thinks that others will hurt her; always looks [for] exits in order to escape a volatile situation"); and recurrent obsessions or compulsions resulting in marked distress ("checks and rechecks locked doors, the stove, etc."), among others. (Tr. 403). Ms. Weil reported that plaintiff "expresses feeling depression much of everyday; has great

fears of leaving her home; is easily agitated; has crying spells daily; and is plagued with audio and visual hallucinations that terrify her." (Tr. 406). Ms. Weil assessed that plaintiff would be extremely and markedly limited in her ability to perform specific work-related activities from a mental health standpoint. (Tr. 404-406).

Instead of examining whether Ms. Weil's May 2014 opinion was consistent with her own treatment records and the other evidence of record, including Dr. Chiappone's assessment, the ALJ instead relied on his own conjecture that such limitations, if true, would have resulted in additional psychiatric hospitalizations or the institutionalization of plaintiff. (Tr. 50). The ALJ provided no medical or legal authority for this assertion, and a review of Ms. Weil's and Dr. Berhowzer's progress notes appears to lend substantial support to Ms. Weil's assessment. In addition, the Commissioner's argument that Ms. Weil's extreme limitation on plaintiff's ability to function independently is inconsistent with plaintiff's ability to live independently misperceives the nature of the mental health questionnaire completed by the treating therapist. All of the limitations assessed by Ms. Weil addressed how plaintiff would function in a *work setting* and not her daily life. (Tr. 404-406). Likewise, the ALJ's single citation to plaintiff's ability to help a disabled neighbor (Tr. 50, citing Tr. 498) is not an adequate basis to discount Ms. Weil's opinion. The ALJ references plaintiff's August 2015 report to a different therapist that "she has volunteered to assist a neighbor with a physical disability by running errands for her. The client states that this type of outreach to help others is also assisting her in coping with her triggers to (sic) depression." (Tr. 498). The ALJ seemingly ignores the next progress note a mere six days later that plaintiff presented with a depressed mood and flat affect, and she was

15

tearful during the session. (Tr. 499). The ALJ's selective citation to the record is not representative of plaintiff's functioning over time.

Finally, the ALJ failed to consider whether the other evidence of record supported Ms. Weil's assessment. The ALJ's failure to take this and the other relevant regulatory factors into account, coupled with the ALJ's improper reliance on other considerations to discount Ms. Weil's assessment, was error. Plaintiff's second assignment of error should be sustained.

### 3. Dr. Fritzhand's limitation on stooping

Dr. Martin Fritzhand, M.D., performed a consultative examination of plaintiff in December 2013 and diagnosed morbid obesity, chronic pain in the shoulders and right knee, past history of polysubstance abuse, and sinus tachycardia. (Tr. 318). Dr. Fritzhand concluded that plaintiff appeared "capable of performing a moderate amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects. She is unable to squat or stoop." (Tr. 318).

The ALJ gave "substantial weight" to Dr. Fritzhand's assessment (Tr. 49) and stated that Dr. Fritzhand's assessment was "accommodated by the residual functional capacity finding of this decision." (Tr. 50). However, the ALJ did not include Dr. Fritzhand's prohibition on stooping in the RFC finding but instead included a provision that plaintiff could "occasionally stoop." (Tr. 47). The ALJ's hypothetical question to the VE also included the provision for occasional stooping. (Tr. 110).

Plaintiff contends the ALJ erred by disregarding the ban on stooping imposed by Dr. Fritzhand and by posing a hypothetical question to the VE that omitted this restriction. The Commissioner contends the "ALJ reasonably translated Dr. Fritzhand's 'moderate' limitations

16

into work-related functional limitations in the RFC finding." (Doc. 9 at 12). The Commissioner also contends that the ALJ's failure to include a limitation precluding stooping would be harmless error because, according to the Commissioner, the Dictionary of Occupational Titles does not specify that stooping is required for the price marker job and photocopy machine operator jobs identified by the VE. (Doc. 9 at 12 and 13, citing DOT 209.587.034 and DOT 207.685-014).

While the ALJ stated he gave "substantial weight" to Dr. Fritzhand's opinion and accommodated the limitations he assessed, the RFC finding fails to include the no stooping limitation Dr. Fritzhand specifically assessed. This is not simply a translation of Dr. Fritzhand's "moderate" limitations into work-related functional limitations as the Commissioner suggests because Dr. Fritzhand gave a specific, concrete limitation that plaintiff was unable to stoop. (Tr. 318). Therefore, it is unclear whether the ALJ simply made a mistake in omitting this limitation from his RFC finding, or whether he implicitly declined to adopt this limitation without explaining why. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp.3d 797, 803-804 (S.D. Ohio 2017) (Report and Recommendation), *adopted*, No. 3:16-cv-124, 2017 WL 3412107 (S.D. Ohio Aug.8, 2017) ("An ALJ must meaningfully explain why certain limitations are not included in the RFC determination, especially when such limitations are set forth in opinions the ALJ weighs favorably.") (citations omitted). Without further clarification from the ALJ, the Court is unable to say that the RFC and resultant hypothetical question to the VE are substantially supported by the evidence. Moreover, it is not apparent to the Court that the two jobs identified by the Commissioner do not require the stooping that Dr. Fritzhand prohibited such that any error on the part of the ALJ would be harmless. A review of the DOT descriptions of these jobs does not

17

reveal that stooping is not required, and Social Security Ruling 85-15 suggests that occasional stooping is required for light work activity. *See* SSR 85-15 ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact."). Thus, plaintiff's third assignment of error should be sustained and the matter remanded for clarification of the vocational implications of Dr. Fritzhand's prohibition on stooping.

### 4. The Court need not reach plaintiff's remaining assignments of error.

It is not necessary to address plaintiff's remaining assignments of error that the ALJ disregarded both the testimony of the vocational expert that plaintiff could not work due to the "moderate" physical limitations placed on her by Dr. Fritzhand and the effect of plaintiff's obesity on her ability to do the standing and walking needed for light work. Success on either of these statements of error would require a remand for further proceedings and clarification of the vocational implications of plaintiff's remaining ability to perform a range of light work given Dr. Fritzhand's "moderate" limitations on standing and walking and the impact of plaintiff's obesity on her ability to perform light work. *See, e.g., Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (remand required for consideration of claimant's obesity on ability to walk: "ability to ambulate also should have been considered in the context of [claimant's BMI]—a disturbing 53.7 where the cut-off for Level III obesity is 40").[3]

## III. This matter should be reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not

---

[3] Plaintiff's BMI has been assessed as 44.92 (Tr. 427), 49.41 (Tr. 483), and 50.07 (Tr. 478).

been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to clarify the vocational implications of Dr. Chiappone's and Dr. Fritzhand's opinions, which the ALJ accepted, for plaintiff's ability to perform substantial gainful activity; for consideration of plaintiff's obesity on her ability to perform the necessary walking and standing required for light work; and for further medical and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: 8/15/18

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LISA MITCHELL,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:17-cv-361
Black, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).